UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JAMES D'CRUZ; NATIONAL     §
RIFLE ASSOCIATION OF     §
AMERICA, INC.,     §
        *Plantiffs*,     §
    §
v.     §     CIVIL ACTION NO. 5:10-CV-141-C
    §
STEVEN McCRAW, in his official     §
Capacity as Director of the Texas     §
Department of Public Safety,     §
        *Defendant*.     §

---

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney
General

BILL COBB
Deputy Attorney General for
Civil Litigation

DAVID C. MATTAX
Deputy of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation
Division

JONATHAN F. MITCHELL
Solicitor General
State Bar No. 24075463

DREW L. HARRIS
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1695
Fax: (512) 474-2697
jonathan.mitchell@oag.state.tx.us

COUNSEL FOR DEFENDANT

TABLE OF CONTENTS

Table of Authorities ........................................................................................iii

I.     Introduction ..................................................................................... 1

II.    Statutory Background......................................................................3

       A.     Statutory Provisions at Issue: The CHL Statute and
              Penal Statute............................................................................3

III.   Argument..........................................................................................5

       A.     Plaintiffs Lack Standing to Challenge the CHL Statute
              and Penal Statute.....................................................................5

              1.    The Individual Plaintiffs Lack Standing Where They
                    Have Never Applied for a CHL Permit, Have Not
                    Exhausted Administrative Remedies, and Do Not Face
                    Immediate Criminal Prosecution……...............................6

              2.    The NRA Lacks Associational Standing……………….8.

       B.     Nothing in the Constitution Prevents States From
              Establishing 21 Years as the Age of Majority for Carrying
              Concealed Handguns. ..............................................................10

       C.     Texas's Decision to Establish 21 as the Age of Majority for
              Carrying a Concealed Handgun Rests on Sound Policy
              Considerations and Is Not a Pretext. ......................................16

              1.    Crime Statistics Confirm That Age 21 Represents An
                    Appropriate Age of Majority for a Concealed-Handgun
                    License……………………………………………………17

              2.    35 Other States Have Chosen 21 as the Age of Majority
                    for Carrying Concealed Handguns……………………….20

i

D.      The Right to Keep and Bear Arms Should Not Be
         Subjected to So-Called "Intermediate Scrutiny"; Rather,
         This Case Should Be Resolved Solely on the States'
         Reserved Prerogative to Establish Ages of Majority For
         Handgun Possession. .................................................................23

E.      Plaintiffs' Equal Protection Claim Fails. ...................................25

Conclusion .........................................................................................................27

Certificate of Service .........................................................................................29

TABLE OF AUTHORITIES

## Cases

*Allam v. State,*
    830 P.2d 435 (Alaska Ct. App. 1992).................................................................. 16

*Assoc. of American Physicians & Surgeons, Inc. v. Texas Medical Bd.,*
    627 F.3d 547 (5th Cir. 2010) .......................................................................... 10

*Babbitt v. United Farmworkers Nat'l Union,*
    442 U.S. 289 (1979) ....................................................................................... 8

*Barron v. Baltimore,*
    32 U.S. 243 (1833) ....................................................................................... 11

*Bd. of Trs. of the Univ. of Ala. v. Garrett,*
    531 U.S. 356 (2001) ..................................................................................... 26

*Blassman v. Markworth,*
    359 F. Supp. 1 (N.D. Ill. 1973) ............................................................... 14, 16

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ......................................................................................... 6

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ................................................... 23

*Dorr v. Weber,*
    741 F. Supp. 2d 993 (N.D. Iowa 2010)........................................................21

*FCC v. Beach Communications, Inc.,*
    508 U.S. 307 (1993) ..................................................................................... 26

*GeorgiaCarry.Org, Inc. v. Georgia,*
    __ F. Supp. 2d __, 2011 WL 240108 (M.D.Ga. Jan. 24, 2011) ....................... 24

*Gonzalez v. Village of West Milwaukee,*
    2010 WL 1904977 (E.D. Wis. May 11, 2010)................................................. 21

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ..................................................................................... 26

*Harper v. Virginia State Bd. of Elections,*
    383 U.S. 663 (1966) ................................................................... 14

*Heller v. District of Columbia ("Heller II"),*
    698 F. Supp. 2d 179 (D.D.C. 2010) ................................... 23

*Hooper v. Bernalillo County Assessor,*
    472 U.S. 612 (1985) ................................................................... 26

*Hunt v. Washington State Apple Advertising Comm'n,*
    432 U.S. 333 (1977) .............................................................. 9, 10

*In re Factor,*
    2010 WL 1753307 (N.J. Super. App. Div. April 21, 2010)............................ 21

*Jones v. Jones,*
    72 F.2d 829 (D.C. Cir. 1934) .......................................................... 15

*Marte v. INS,*
    562 F. Supp. 92 (S.D.N.Y. 1983) ....................................................... 14

*Maryland State Police v. McLean,*
    14 A.3d 658 (Md. App. 2011) .......................................................... 21

*McDonald v. Chicago,*
    130 S. Ct. 3020 (2010) ............................................................. 11, 21

*Meyers v. Roberts,*
    246 N.W.2d 186 (Minn. 1976) ......................................................... 14

*Morrissey v. Perry,*
    137 U.S. 157 (1890) ................................................................... 15

*N.Y. State Club Ass'n, Inc. v. City of New York,*
    487 U.S. 1 (1988) ...................................................................... 9

*Nordyke v. King,* --- F.3d ---, 2011 WL 1632063  (9th Cir. May 2, 2011)................... 24

*Oregon v. Mitchell,*
    400 U.S. 112 (1970) ............................................................ 14, 16, 17

*People v. Dawson,*
    934 N.E.2d 598 (Ill. App. 1 Dist. 2010) ............................................ 21, 22

*People v. Dykes,*
  46 Cal.4th 731 (Cal. 2009) ............................................................. 22

*People v. Perkins,*
  62 A.D.3d 1160 (N.Y. App. Div. 2009) ........................................... 22

*People v. Yarbrough,*
  169 Cal.App.4th 303 (Cal. App. 1st Dist. 2008) ............................. 22

*Peruta v. County of San Diego,*
  __ F. Supp. 2d __, 2010 WL 5137137 (S.D. Cal. Dec. 10, 2010) ...................... 24

*Peterson v. LaCabe,*
  2011 WL 843909 (D. Colo. March 8, 2011) ...................................... 24

*Rent Stabilization Ass'n of City of N.Y. v. Dinkins,*
  5 F.3d 591 (2d Cir. 1993) ............................................................... 10

*Reynolds v. Sims,*
  377 U.S. 533 (1964) ...................................................................... 14

*Roark & Hardee LP v. City of Austin,*
  522 F.3d 533 (5th Cir. 2008) ............................................................ 6

*Robertson v. Baldwin,*
  165 U.S. 275 (1897) ...................................................................... 21

*Roe v. Wade,*
  410 U.S. 113 (1973) ............................................................... 20, 21

*Rourke v. U.S. Fid. & Guar. Co.,*
  1 S.E. 2d 728 (Ga. 1939) ............................................................... 16

*San Diego County Gun Rights Committee v. Reno,*
  98 F.3d 1121 (9th Cir. 1996) ............................................................ 8

*Schlesinger v. Reservists Comm. to Stop the War,*
  418 U.S. 208 (1974) ....................................................................... 6

*Stanton v. Stanton,*
  429 U.S. 501 (1976) (per curiam) ................................................. 14

v

*State v. Knight,*
    218 P.3d 1177 (Kan. App. 2009) ................................................................ 21-22

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ........................................................................................ 5

*Teng v. Town of Kensington,*
    2010 WL 596526 (D.N.H. Feb. 17, 2010) ................................................... 21

*U.S. v. Emerson,*
    270 F.3d 203 (5th Cir. 2001) ..................................................................... 21

*United States v. Bledsoe,*
    2008 WL 3538717 (W.D. Tex. Aug. 8, 2008) ............................................. 24

*United States v. Chester,*
    628 F.3d 673 (4th Cir. 2010) ..................................................................... 24

*United States v. Comstock,*
    130 S. Ct. 1949 (2010) ............................................................................... 11

*United States v. Dukes,*
    479 F.2d 324 (5th Cir. 1973) ..................................................................... 16

*United States v. Engstrum,*
    609 F. Supp. 2d 1227 (D. Utah 2009) ....................................................... 24

*United States v. Hall,*
    2008 WL 3097558 (S.D.W.Va. Aug. 4, 2008) ............................................ 21

*United States v. Lopez,*
    514 U.S. 549 (1995) ................................................................................... 11

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010) ......................................................................... 24

*United States v. Masciandaro, --- F.3d ---,*
    2011 WL 1053618 (4th Cir. 2011) ............................................................. 24

*United States v. Reese,*
    627 F.3d 792 (10th Cir. 2010) ................................................................... 24

*United States v. Richardson,*
   418 U.S. 166 (1974) ............................................................................. 6

*United States v. Rozier,*
   598 F.3d 768 (11th Cir. 2010) ........................................................... 24

*United States v. Skoien,*
   614 F.3d 638 (7th Cir. 2010) (en banc) ........................................... 24

*United States v. White,*
   593 F.3d 1199 (11th Cir. 2010) ......................................................... 24

*United States v. Williams,*
   616 F.3d 685 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 805 (2010) .................. 24

*United States v. Yancey,*
   621 F.3d 681 (7th Cir. 2010) ............................................................. 24

*Valley Forge and Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................... 6, 7, 8, 10

*Valley Forge Christian College v. Americans United for Separation of
   Church and State,* 454 U.S. 464 (1982) ..................................... 5, 7, 8

*Williams v. State,*
   10 A.3d 1167 (Md. 2011) ............................................................. 7-8, 21

*Wurtzel v. Falcey,*
   354 A.2d 617 (N.J. 1976) (per curiam) ............................................ 14

**Statutes**

ALASKA STAT. §18.65.705 (2010) ............................................................. 20

Ariz. Rev. Stat. Ann. § 13-3112 (2010) ................................................. 20

COLO. REV. STAT. ANN. § 18-12-203(1) (2010) ........................................ 20

Conn. Gen. Stat. Ann. § 29-28 (2010) ................................................... 20

FLA. STAT. ANN. § 790.06(2) (2010) ......................................................... 20

vii

GA. CODE ANN. § 16-11-129(b) (2010)..................................................................20

HAW. REV. STAT. ANN. §134-2(d) (2010) .............................................................20

IDAHO CODE ANN. §18-3302(1) (2010) .................................................................20

IOWA CODE ANN. § 724.8 (effective Jan. 1, 2011) ...............................................20

KAN. STAT. ANN. § 75-7c04 (2010) ......................................................................20

KY. REV. STAT. ANN. § 237.110(4) (2010)...........................................................20

LA. REV. STAT. ANN. § 1379.3 (2010) ..................................................................20

MASS. GEN. LAWS ANN. ch. 140 § 131 (2010)......................................................20

MICH. COMP. LAWS ANN. § 28.425b(7) (2010) .....................................................20

MINN. STAT. ANN. § 624.714 (2010) .....................................................................20

MISS. CODE ANN. § 45-9-101(2) (2010) ................................................................20

MO. ANN. STAT. § 571.101 (2010).........................................................................20

N.C. GEN. STAT. ANN. § 14-415.12(a) (2010) ......................................................20

N.J. STAT. ANN. § 2C:58-4 (2010).........................................................................20

N.M. STAT. ANN. § 29-19-4 (2010)........................................................................20

N.Y. PENAL LAW § 400.00 (2010) .........................................................................20

NEB. REV. STAT. ANN. § 69-2433(1) (2010) .........................................................20

NEV. REV. STAT. ANN. § 202.3657 (2010).............................................................20

OHIO REV. CODE ANN. § 2923.125(D) (2010) .......................................................20

OKLA. STAT. ANN. tit. 21 § 1290.9 (2010)............................................................20

OR. REV. STAT. ANN. § 166.291 (2010).................................................................20

Pa. Cons. Stat. Ann. § 6109 (2010).......................................................................20

R.I. GEN. LAWS § 11-47-11 (2010) .................................................................. 20

S.C. CODE ANN. § 23-31-215 (2010) .............................................................. 20

TENN. CODE ANN. § 39-17-1351 (2010) ........................................................ 20

TEX. ALCO. BEV. CODE § 106.06 .................................................................... 27

TEX. GOV'T CODE § 411.171 ............................................................................ 3

TEX. GOV'T CODE § 411.172 ...................................................................... 3, 20

TEX. GOV'T CODE § 411.172 (2010) ............................................................. 20

TEX. GOV'T CODE § 411.172(a) .................................................... 2, 4, 10, 17

TEX. GOV'T CODE § 411.172(a)(2) ........................................................ 2, 17

TEX. GOV'T CODE § 411.172(g) .................................................................. 4, 5

TEX. GOV'T CODE § 411.188 ...................................................................... 4, 10

TEX. PENAL CODE § 46.02(a) ........................................................................... 4

TEX. PENAL CODE § 46.15(b)(2) ..................................................................... 4

TEX. PENAL CODE § 46.15(b)(3) ..................................................................... 4

TEX. PENAL CODE § 46.15(b)(6) ..................................................................... 4

U.S. Const. amend XIV ...................................................................................... 1

U.S. Const. amend. XIV § 2 ............................................................................ 13

UTAH CODE ANN. § 53-5-704 (2010) ........................................................... 20

VA. CODE ANN. §  18.2-308(D) (2010) ........................................................ 20

W. VA. CODE ANN. § 61-7-4 (2010) ............................................................. 20

WASH. REV. CODE ANN. § 9.41.070 (2010) ................................................ 20

WYO. STAT. ANN. § 61-7-4 (2010) ............................................................... 20

ix

## Other Authorities

Akhil Reed Amar,
    *The Bill of Rights and the Fourteenth Amendment*,
    101 YALE L.J. 1193 (1992) ............................................................................. 11

42 Am. Jur. 2d Infants § 6 .................................................................................. 16

FBI, Crime in the United States 2009 (Sept. 2010) ................................................ 18

H.J. of Tex., 74th Leg., R.S. (1995) .................................................................... 5

John Harrison,
    Reconstructing the Privileges and Immunities Clause,
    101 YALE L.J. 1385 (1992) ........................................................................ 25-26

Keely A. Magyar,
    Betwixt and Between but Being Booted Nonetheless: A
    Developmental Perspective on Aging Out of Foster Care, 79
    TEMP. L. REV. 557 (2006) ........................................................................... 13

Militia Act of 1792, 1 Stat. 271 ......................................................................... 13

Randy E. Barnett,
    *The Original Meaning of the Commerce Clause*,
    68 U. CHI. L. REV. 101 (2001) ...................................................................... 11

Sanford Levinson,
    *The Embarrassing Second Amendment*,
    99 YALE L.J. 637 (1989) .............................................................................. 25

Senate Comm. on Veterans Affairs and Military Installations,
    Bill Analysis, Tex. S.B. 322, 79th Leg., R.S (2005) ......................................... 27

T.E. James, *The Age of Majority*, 4 AM. J. LEGAL HIST. 22 (1960) ........................ 13

House Research Organization, Bill Analysis, S.B. 60, 74th Leg., R.S.
    (2005) ....................................................................................................... 5

U.S. Departments of Justice and Treasury,
    *Gun Crime in the Age Group 18-20* (June 1999) .......................................... 17

TO THE HONORABLE SAM CUMMINGS, U.S. DISTRICT JUDGE:

Defendant Steven McCraw files this brief in support of his Motion for Summary Judgment, asking this Court to dismiss the constitutional claims against Texas's concealed-handgun-license statute ("CHL Statute").

# I.
## INTRODUCTION

The right to keep and bear arms is a fundamental bulwark of freedom, and our Constitution demands that federal and state governments respect this individual right. But the States' police powers allow them to establish reasonable, non-pretextual minimum ages for the exercise of constitutionally protected liberties, and the Constitution permits States to limit certain constitutional rights to persons over the age of 21. This is true with regard to some First Amendment freedoms and the enforcement of contracts; it is equally true of the right to carry a concealed handgun.

Federal courts have no power to declare state law "unconstitutional" unless a past supermajority, large enough to surmount Article V or Article VII of the Constitution, has decided to foreclose the States from legislating on that issue. Yet no one who drafted or ratified the Fourteenth Amendment could have possibly thought that they were enshrining for all time an 18-year-old minimum-age requirement for the fundamental rights of citizenship. One need only glance at section 2 of the Fourteenth Amendment, which penalizes States who deny the franchise "to any of the male inhabitants of such State, *being twenty-one years of age*, and citizens of the United States." U.S. CONST. AMEND XIV (emphasis added).

Those who enacted the Fourteenth Amendment fully approved of state regimes that limited certain rights of citizenship to persons under the age of 21; it is impossible to maintain that this Amendment simultaneously precludes a State from choosing the age of 21, rather than 18, as the minimum age to carry a concealed handgun. The notion that the age of 18 has talismanic significance for triggering all rights of citizenship is a post-ratification development, which cannot inform the meaning of the Fourteenth Amendment or any other constitutional provision relevant to this litigation.

* * *

Texas allows its residents to carry concealed handguns, but only if they first obtain a concealed handgun license ("CHL").  TEX. GOV'T CODE § 411.172(a).  The minimum age to obtain a CHL is 21, but the statute provides an exception for current or former members of the military, who may obtain a CHL if they are at least 18 years old.  TEX. GOV'T CODE § 411.172(a)(2).  The Plaintiffs in this case currently include the National Rifle Association of America, Inc., ("NRA") and James D'Cruz (referred to herein as one of the "Individual Plaintiffs").[1]  The Plaintiffs assert that the 21-year minimum age requirement violates the right to keep and bear arms that the Fourteenth Amendment secures against state governments, and also violates the Fourteenth Amendment's Equal Protection clause.

---

[1] Plaintiffs seek to replace Mr. D'Cruz with new individual Plaintiffs Rebekah Jennings, Brennan Harmon, and Andrew Payne.  *See* Document No. 44.  For the Court's convenience, Mr. D'Cruz and the new individuals will be referred to collectively herein as the "Individual Plaintiffs."

But the Plaintiffs lack standing to challenge Texas's minimum-age requirement.  The Individual Plaintiffs have not actually applied for a concealed handgun license, and do not face a credible threat of prosecution.  And the NRA alleges no injury to itself; it claims only associational standing because its members include individuals between the ages of 18 and 21 who desire a CHL.  Yet the individualized fact questions regarding CHL eligibility of its members preclude the NRA's associational standing.

## II.
## STATUTORY BACKGROUND

### A.   STATUTORY PROVISIONS AT ISSUE: THE CHL STATUTE AND PENAL STATUTE.

In 1995, the Legislature enacted Chapter 411 of the Texas Government Code, which created Texas's CHL program.  *See* TEX. GOV'T CODE §§ 411.171 *et seq.*  Section 411.172 contains most of the eligibility requirements for CHL applicants.  Applicants must:

- Be at least 21 years of age (unless a current or former military service member);
- Be a legal resident of Texas for the six-month period preceding the date of application;
- Not have been convicted of a felony;
- Not have been charged with a felony or Class A or Class B misdemeanor;
- Not be a chemically dependent person;
- Be capable of exercising sound judgment with respect to the proper use and storage of a handgun;
- Not be delinquent in making child support payments or state tax payments;
- Not be restricted under a court protective order or subject to a restraining order affecting spousal relationships; and
- Not have made any material misrepresentation or omission in the application for a CHL.

3

TEX. GOV'T CODE § 411.172(a).  In addition, each applicant must pass a course in handgun proficiency taught by an approved handgun instructor prior to applying for a CHL.  *Id*. at § 411.188.  The CHL Statute contains an exception to the 21-year minimum-age requirement for current members of the United States' armed forces and honorably discharged veterans; they can qualify for a CHL at 18 years of age. *Id*. at § 411.172(g).

Section 46.02(a) of the Texas Penal Code imposes criminal liability on any person who:

> intentionally, knowingly, or recklessly carries on or about his or her person a handgun, illegal knife, or club if the person is not:
> > (1) on the person's own premises or premises under the person's control; or
> > (2) inside of or directly en route to a motor vehicle that is owned by the person or under the person's control.

TEX. PENAL CODE § 46.02(a).  But this criminal provision is inapplicable to persons carrying a concealed handgun and valid CHL, *see* TEX. PENAL CODE § 46.15(b)(6), as well as to persons "traveling" or engaged in hunting or sporting activity, *id*. at §§ 46.15(b)(2), (3).  Plaintiffs challenge the Penal Statute only as applied to "law-abiding adults between the ages of eighteen and twenty . . . carrying a handgun outside the person's own premises or automobile."  Amended Complaint [Document No. 20] ("Compl.") ¶¶ 31, 34.

Texas enacted its concealed-handgun exemption in 1995.  Initially this law imposed a 21-year minimum-age requirement on all Texas residents, including military personnel and veterans.  Although one member of the House of Representatives proposed an amendment that would have lowered the minimum-

age requirement to 18 years, that amendment was tabled by a vote of 99-42.  *See* H.J. of Tex., 74th Leg., R.S. 1588 (1995) Appendix p. 2.  In 2005 the legislature enacted legislation to allow military personnel and veterans to obtain a CHL at age 18.  *See* TEX. GOV'T CODE § 411.172(g).  But it retained the 21-year minimum-age requirement for everyone else.  Throughout the debates, the legislative record reflects the legislators' focus on "crime and violence prevention."  House Research Organization, Bill Analysis, Tex. S.B. 60, 74th Leg., R.S. (1995) at 10-11 Appendix p. 11-12.

### III.
### ARGUMENT

**A.    PLAINTIFFS LACK STANDING TO CHALLENGE THE CHL STATUTE AND PENAL STATUTE.**

Before this Court can consider the Fourteenth Amendment issues, it must first determine whether it has subject-matter jurisdiction over the Plaintiffs' claims. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).  Article III limits the judicial power of the United States to "cases" or "controversies," and this requires a Plaintiff to show, "at an irreducible minimum":  (a) that "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" (b) that the injury "fairly can be traced to the challenged action"; and (c) that the injury "is likely to be redressed by a favorable decision."  *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982) (citations omitted).  The Individual Plaintiffs in this case fail to satisfy the injury-in-fact requirement because they have not applied for a CHL, and

the "injury" that they allege depends entirely on the hypothetical possibility that they might apply for a CHL in the future.  That is not sufficient to confer standing under the Supreme Court's rulings in *Valley Forge* and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  And it logically follows from the individual Plaintiffs' lack of standing that the NRA lacks associational standing to sue on behalf of its members.

> **1.    The Individual Plaintiffs Lack Standing Where They Have Never Applied for a CHL Permit, Have Not Exhausted Administrative Remedies, and Do Not Face Immediate Criminal Prosecution.**

To establish injury-in-fact under Article III, a plaintiff must allege an injury that is:   (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citations omitted).  Article III does not permit plaintiffs to litigate a "generalized grievance," or a "generalized interest of all citizens in constitutional governance."  *See United States v. Richardson*, 418 U.S. 166 (1974); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974); *see also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) ("The injury-in-fact element requires that a plaintiff show that he or she 'has sustained or *is immediately in danger of sustaining* some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural or hypothetical.'") (emphasis in original, quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)).

The Individual Plaintiffs have not suffered a "concrete and particularized" injury because they have not been denied a CHL—indeed, they have not even

applied for one.  They allege only that they could not proceed with a website CHL application because the "website stated that to apply, [the Individual Plaintiffs] must be at least 21 years of age or at least 18 years of age if currently serving in or honorably discharged from the military."  Compl. ¶ 26.  That is not enough to distinguish the Individual Plaintiffs' injuries from the general public's widely shared interest in constitutional government.  Anyone can visit a government website, notice that the minimum age for a CHL is 21 years, and invoke their disagreement with this policy as a reason to sue state officials.  But Article III does not allow federal courts to entertain constitutional challenges based solely on a Plaintiff's disapproval of a State's law.  Something more is needed to create a "case or controversy" within the federal courts' subject-matter jurisdiction, and to distinguish the Individual Plaintiffs' claims from the "generalized grievances" that fall beyond the federal courts' authority to resolve.  *See Valley Forge*, 454 U.S. at 485–87; *Lujan*, 504 U.S. at 573-75.

The Individual Plaintiffs cannot establish an "injury in fact" caused by the minimum-age requirement until they submit an application with the required fingerprints, birth certificate, and proof of handgun proficiency.  Only then can an Article III court ascertain whether the Individual Plaintiffs' inability to obtain a CHL is caused by their age, as opposed to some other disqualifying facts.  And only after the state officials consider and reject such an application can the Individual Plaintiffs assert a concrete injury that can be distinguished from a mere ideological interest in seeing the Constitution obeyed.  *See, e.g., Williams v. State*, 417 Md. 479

(Md. 2011) (denying standing to challenge handgun licensing regulations because the litigant failed to apply for the permit).  The Individual Plaintiffs' "injury" rests entirely on speculation that they might submit a CHL application someday in the future, and that state authorities will reject their applications exclusively for age-based reasons.  This is manifestly insufficient to establish "injury in fact" under the Supreme Court's decisions.  *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the "actual or imminent" injury that our cases require.").

The Individual Plaintiffs also lack standing to challenge the Penal Statute because they have not been convicted under it, and do not face any threat of prosecution.  *See Babbitt v. United Farmworkers Nat'l Union*, 442 U.S. 289, 298-99 (1979) ("When plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible, they do not allege a dispute susceptible to resolution by a federal court.") (citations and internal quotation marks omitted); *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996) (holding that a "general threat of prosecution is not enough to confer standing" if the plaintiff encounters no specific threat of prosecution).

## 2.  The NRA Lacks Associational Standing.

The NRA has not alleged any injury from the minimum-age requirement, but it sues on behalf of its members.  Compl. ¶ 29.  An association may sue on its

members behalf only if:  (1) the members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the individual members' participation in the lawsuit.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The NRA's claims fail the first prong of this test because the only members it identifies are the Individual Plaintiffs, and these Individual Plaintiffs lack standing to sue in their own right for reasons we have already explained.  The NRA also cannot satisfy the third requirement of *Hunt* because this is not a case in which "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt*, 432 U.S. at 343.  The Supreme Court has made clear that this criterion is met when "there is complete identity between the interests of the consortium and those of its member[s] with respect to the issues raised in this suit, and the necessary proof could be presented 'in a group context.'" *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 10 n.4 (1988) (quoting *Hunt*, 432 U.S. at 344).   Yet the CHL statute imposes numerous eligibility requirements, apart from the minimum-age provision.  *See* TEX. GOV'T CODE §§ 411.172(a), 411.188.  Each applicant, for example, must provide individualized proof that he completed the required handgun-proficiency course.  *See id*. at § 411.188. And without individualized proof that the NRA members meet all these additional requirements, its members cannot establish a causal link between the minimum-age requirement and their alleged injury.

The Amended Complaint baldly asserts that "some of NRA's members would apply for and would receive a Texas CHL" but for the minimum-age requirement. Compl. at ¶ 29. But a plaintiff cannot withstand a summary-judgment motion by invoking conclusory allegations in a pleading, and an association cannot establish standing at this stage of the proceedings merely by relying on these statements. *See Lujan*, 504 U.S. at 561 (holding that "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements [of standing]," and that "[i]n response to a summary judgment motion, . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'") (citations omitted). Because the decision to grant or deny a CHL application rests on specific, individualized information, and requires a factual inquiry for each applicant, the NRA cannot claim associational standing in this litigation. *See Hunt*, 432 U.S. at 343. *See also Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993) (denying associational standing when the organization's claims require an "ad hoc factual inquiry" for each member"); *Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd.*, 627 F.3d 547, 552 (5th Cir. 2010) (noting that the "amount of individual participation" required to prove claims can foreclose associational standing).

**B.    NOTHING IN THE CONSTITUTION PREVENTS STATES FROM ESTABLISHING 21 YEARS AS THE AGE OF MAJORITY FOR CARRYING CONCEALED HANDGUNS.**

The State laws in this case implicate not the Second Amendment, but the Fourteenth Amendment's right to bear arms that the Supreme Court recognized in

*McDonald v. Chicago*, 130 S. Ct. 3020 (2010).  It is all too common for litigants and courts to elide this distinction between the rights and privileges that citizens enjoy against the federal and state governments.  But the federal government holds only the delegated and enumerated powers described in Article I, § 8, and it lacks a general police power that would empower it to set minimum ages for carrying concealed weapons.  *See United States v. Comstock*, 130 S. Ct. 1949, 1964 (2010) (noting that "the Founders denied the National Government" a "general police power" and instead "resposed [it] in the States.").  To ask whether "the Second Amendment" protects the rights of 18-year-olds to carry concealed handguns is beside the point.  The federal government lacks Article I power even to regulate the mere possession of firearms, let alone establish a nationwide minimum age for concealed-handgun licenses.  *See United States v. Lopez*, 514 U.S. 549 (1995); Randy E. Barnett, *The Original Meaning of the Commerce Clause*, 68 U. CHI. L. REV. 101 (2001).  The Second Amendment supplements these limits on federal power with a broadly phrased right to keep and bear arms that makes no pretense of accommodating the States' police powers because it was designed to constrain only the federal government.  *See Barron v. Baltimore*, 32 U.S. 243 (1833); Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 YALE L.J. 1193, 1198– 1217 (1992).  For this reason, the text of the Second Amendment fails to exclude infants from the right to keep and bear arms.  This was not an oversight on the part of those who drafted the Amendment; instead, it reflects the pre-incorporation world in which the States, rather than the federal government, would make the

crucial decisions regarding the age at which individuals can lawfully possess and use firearms.

When the Supreme Court interprets the Fourteenth Amendment to incorporate a constitutionally protected right against the States, it does not revoke a State's prerogative to choose 21 rather than 18 as the age of majority, especially for an issue of public safety that lies at the heart of the States' police powers. This is obvious enough to anyone who reads the Fourteenth Amendment, as section 2 explicitly allows the States to withhold the right to vote from anyone under the age of 21. *See* U.S. CONST. AMEND. XIV § 2 ("But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, *being twenty-one years of age*, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens *twenty-one years of age* in such State.") (emphasis added). The very constitutional provision on which the Plaintiffs rely enshrines the age of 21, not 18, as the age of majority for one of the most important privileges of citizenship. Plaintiffs cannot simultaneously maintain that this amendment covertly forces the States to establish the age of 18 as their age of majority for all other fundamental rights.

And at common law, individuals were deemed infants until age 21. *See* T.E. James, *The Age of Majority*, 4 AM. J. LEGAL HIST. 22, 28 (1960). Every provision in the Bill of Rights, including the Second Amendment, was enacted against this common-law backdrop that both limited the rights of privileges of persons under the age of 21 and allowed the States to treat them as infants. True, the Militia Act of 1792 imposed military obligations on men as young as 18, *see* Militia Act of 1792, 1 Stat. 271, but 21 remained the widely adopted age of majority the United States until the 1970s. *See* Keely A. Magyar, *Betwixt and Between but Being Booted Nonetheless: A Developmental Perspective on Aging Out of Foster Care*, 79 TEMP. L. REV. 557, 601 (2006) ("Twenty-one has, throughout Western history, often been the dividing line between minority and majority…. It was also the statutory age of majority in most States before 1971, when the Twenty-Sixth Amendment lowered the minimum voting age from twenty-one to eighteen."). Even after the enactment of the Twenty-Sixth Amendment, many States retained a 21-year age of majority for exercising many other rights. And in all events, the Militia Act of 1792 suggests only that *military personnel* aged 18 or older should fully enjoy all privileges related to the right to keep and bear arms, and Texas already extends concealed-handgun licenses to those individuals. The 1792 Militia Act offers little if any support for the proposition that the Constitution somehow bars States from treating *non-military* individuals under the age of 21 as infants ineligible for concealed-handgun licenses.

If the Constitution implicitly establishes 18 years as the minimum age for constitutional rights, as the Plaintiffs claim, then it would not have been necessary

to enact the Twenty-Sixth Amendment to lower the voting age. Under the Plaintiffs' theory of the Constitution, the 18-year-old voting age would have become self-executing as soon as the Warren Court enshrined the right to vote as a "fundamental" constitutional right. *See, e.g., Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964) (describing voting as "a fundamental matter in a free and democratic society"); *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 670 (1966) (recognizing the right to vote as a "fundamental right" under the Constitution). But of course that did not happen. On the contrary, the Supreme Court in *Oregon v. Mitchell*, 400 U.S. 112 (1970), held that the Constitution *forbade* Congress to enact legislation requiring States to lower their voting age from 21 to 18 in state and local elections. Another constitutional amendment was necessary to limit the States' reserved powers to set an age of majority lower than 21, and the Twenty-Sixth Amendment did not affect the States' power to set ages of majority for rights other than the right to vote.[2]

---

[2] *See United States v. Olson*, 473 F.2d 686, 688 (8th Cir. 1973) ("we reject appellant's contention that the Twenty-Sixth Amendment *ipso facto* rendered unconstitutional the twenty-one year minimum" for jury service). After the 1971 passage of the Twenty-Sixth Amendment, courts repeatedly reaffirmed the States' discretion in setting other ages of majority. *See Stanton v. Stanton*, 429 U.S. 501, 504 n.4 (1976) (per curiam) ("we emphasize that Utah is free to adopt either 18 or 21 as the age of majority for both males and females for child-support purposes. The only constraint on its power to choose is … that the two sexes must be treated equally."); *Marte v. INS*, 562 F. Supp. 92, 95 (S.D.N.Y. 1983) ("The ratification of the 26th amendment merely lowered the voting age; it in no way affected the allocation of immigration visas."); *Blassman v. Markworth*, 359 F. Supp. 1, 5-6 (N.D. Ill. 1973) (States have the power to set "reasonable age minimums for state and local offices," including Illinois' age 21 requirement); *Meyers v. Roberts*, 246 N.W.2d 186, 189 (Minn. 1976) (age 21 requirement to hold local public office consistent with equal protection); *Wurtzel v. Falcey*, 354 A.2d 617, 618 (N.J. 1976) (per curiam) (age 21 requirement for members of legislative assembly compatible with equal protection).

Although the Plaintiffs' Amended Complaint observes that 18-year-olds "are considered adults for almost all purposes," this statement has no bearing on whether the enactment of the Fourteenth Amendment deprived States of their prerogative to establish a 21-year-old age of majority for other purposes. That States have *voluntarily* lowered their ages of majority in other contexts does not establish a constitutional barrier to retaining the age of 21 as a minimum-age requirement for carrying concealed handguns, especially when the Fourteenth Amendment itself recognizes the age of 21 as the minimum age for voting. The Plaintiffs seem to be embracing an unusual variant of living constitutionalism, where a State's post-ratification policy decisions can somehow change the meaning of previously enacted constitutional language. But States do not relinquish their reserved powers to establish a 21-year-old age of majority whenever they extend other privileges to 18-year-olds as a matter of legislative grace. *See Morrissey v. Perry*, 137 U.S. 157, 159 (1890) ("The age at which an infant shall be competent to do any acts or perform any duties . . . depends wholly on the legislature.").

The States have long enjoyed the prerogative to set different ages of majority for different purposes. *See* 42 AM. JUR. 2D INFANTS § 6 ("There is no legal requirement that the same age of majority apply to all activities and circumstances, and statutes setting different ages at which a person may engage in an activity or be treated as an adult are within the province of the legislature."); *see also Jones v. Jones*, 72 F.2d 829, 830 (D.C. Cir. 1934) (observing that at common law, individuals were deemed infants until age 21, but noting that "the Legislature may regulate the

age of majority for infants in all cases, or for specified purposes only."); *Allam v. State*, 830 P.2d 435, 438 (Alaska Ct. App. 1992) ("There is no legal requirement that the same age of majority apply to all activities and circumstances."); *Rourke v. U.S. Fid. & Guar. Co.*, 1 S.E. 2d 728, 731 (Ga. 1939) ("The legislature has ample power to regulate the age of minority or majority, and it may prescribe a longer period of minority for some purposes than for others.").  States determine the age of majority for the rights to marry, to serve as a juror, to hold public office—and to own a gun. *See Oregon v. Mitchell*, 400 U.S. 112, 142 (1970) (although 18-year olds may be "generally considered by American law to be mature enough to contract, to marry, to drive an automobile, [or] to own a gun, . . . . [o]n any of these items, the States, of course, have leeway to raise or lower the age requirements") (Douglas, J., dissenting in relevant part); *see also United States v. Dukes*, 479 F.2d 324, 326 (5th Cir. 1973) (States may set age requirement for the right to serve on a jury); *Blassman v. Markworth*, 359 F. Supp. 1, 5-6 (N.D. Ill. 1973) (States may set age requirement for the right to hold state public office).  Nothing in the Fourteenth Amendment deprives Texas of its power to set a 21-year-old age of majority for obtaining a concealed-handgun license.

### C.   TEXAS'S DECISION TO ESTABLISH 21 AS THE AGE OF MAJORITY FOR CARRYING A CONCEALED HANDGUN RESTS ON SOUND POLICY CONSIDERATIONS AND IS NOT A PRETEXT.

Of course, a State cannot invoke its power to set ages of majority as a pretext for disarming the citizenry.  The Constitution would not, for example, permit a State to limit the possession of firearms to individuals over the age of 75.  But

Plaintiffs cannot possibly characterize the 21-year minimum-age requirement in TEX. GOV'T CODE § 411.172(a)(2) as a sham.  Texas's decision to establish a 21-year-old age of majority for carrying concealed handguns is amply supported by empirical evidence, is consistent with the laws of other jurisdictions, and represents an eminently reasonable line-drawing effort to limit CHLs to those with the maturity, experience, and good judgment needed to carry a concealed handgun.

> **1.    Crime Statistics Confirm That Age 21 Represents An Appropriate Age of Majority for a Concealed-Handgun License.**

Contemporary statistics on gun crimes reveal that individuals aged 18-20 commit a disturbingly high amount of gun crimes.  A 1999 joint report from the Treasury Department and the Department of Justice found that:

- "In 1997, 18, 19 and 20 year olds ranked first, second, and third in the number of gun homicides committed. Of all gun homicides where an offender was identified, 24 percent were committed by 18 to 20 year olds. This is consistent with the historical pattern of gun homicides over the past 10 years."

- "Among murderers, 18 to 20 year olds were more likely to use a firearm than adults 21 and over."

- "Similarly, in non-lethal crimes, including assault, rape, and robbery, 18 to 20 year old offenders were more likely to use guns than both younger and older offender age groups."

- "Eighteen to 20 year olds amount to 14 percent, or one in seven, of all those arrested for violent crime."

U.S. Departments of Justice and Treasury, *Gun Crime in the Age Group 18-20* (June 1999), at 2.[3]

---

[3]  *Available at* http://www.psn.gov/pubs/index.aspx#1999.

Other government reports confirm the disproportionately high amount of gun violence committed by those aged 18, 19, and 20. A 2003 report from the Department of Justice notes that:

- "Younger persons, particularly those age 18-20, had higher rates of victimization by armed offenders."
- "The rate of firearms violence was also highest for persons age 18-20. Their rate (12 per 1,000 persons) was about 40% higher than the rate for persons ages 15 to 17 and 21 and 24."
- "Those age 18 to 24 were 3.5 times as likely as persons age 12-17 and about 3 times as likely as those age 25 to 64 to be killed with a firearm."

U.S. Department of Justice, Bureau of Justice Statistics (BJS) Special Report, *Weapon Use and Violent Crime* (Sept. 2003), at 4, 9.[4] An FBI Uniform Crime Report shows that 18-20 year olds accounted for the highest percentages of U.S. arrests in 2009. Eighteen year olds accounted for 4.8% of arrests, 19 year-olds comprised 5% of arrests, and 20 year olds accounted for 4.6% of arrests. *See* FBI, *Crime in the United States 2009* (Sept. 2010).[5]

In addition, Texas (like most States) seals the criminal records of juveniles under the age of 18, to protect their development into adulthood. As a result, Texas cannot research the criminal history of 18-year-old applicants, and has only a limited record available for the 19 and 20 year olds seeking concealed handgun licenses. Setting the minimum age at 21 ensures that the State will have at least three-year window to conduct its criminal background check, and enables applicants

---

[4] *Available at* http://bjs.ojp.usdoj.gov/index.cfm?ty=pbdetail&iid=570.

[5] *Available at* http://www2.fbi.gov/ucr/cius2009/data/table_38.html.

to demonstrate their ability to control violent impulses and abstain from criminal conduct.

Finally, the behavior of Plaintiff James D'Cruz offers, at the very least, some anecdotal support for the Texas legislature's decision to set the age of majority for CHLs at 21. The violent public statements that he posted on his Facebook page— including "*im bored … Ill light someone on fire*," and "*an eye for an eye leaves the whole world blind, thats why I take their heads*"[6]—reflect the writings of one who transparently lacks the maturity, temperament, and good judgment necessary to carry a concealed handgun. Without evincing any sense of irony, Mr. D'Cruz's lawyers rationalize their client's behavior by noting that "tasteless" and "perhaps offensive" comments are "hardly uncommon on the Facebook pages of high school and college students." Document No. 48, at 4-5. This typicality defense only fortifies the Texas's legislature's decision to set the minimum age for CHLs at 21, and withhold them from an age group with a demonstrated propensity to engage in short-sighted and irresponsible behavior. The Constitution would be a suicide pact if it allowed States to set minimum ages for carrying concealed weapons but then forbade them to withhold licenses from the very age group most likely to commit violent gun crimes.

Of course, not all individuals between the ages of 18 and 20 are prone to commit gun violence, or describe violent fantasies on their Facebook pages. But

---

[6] Evidence of James D'Cruz's Facebook postings are attached as **Exhibit A** and **Exhibit B** to Defendant's Opposition to Motion to Add Parties Without Extending Discovery [Document No. 45], and are incorporated herein by reference.

legislatures must adopt rules when establishing ages of majority; no government has the resources to determine on a case-by-case basis whether a minor or infant has the requisite maturity to vote, drive a car, or carry a concealed weapon.  Rules will always be crude, but the Constitution permits States to make these rough cuts when setting minimum-age requirements, even when they implicate constitutional rights, so long as their decisions represent a genuine effort to establish ages of majority rather than a pretextual attempt to eliminate a constitutional right.

### 2.    35 Other States Have Chosen 21 as the Age of Majority for Carrying Concealed Handguns.

Texas is one of 36 States that impose a 21-year-old minimum-age requirement to obtain a CHL.[7]  In addition to these 36 States, Missouri sets the age of majority for carrying concealed handguns at 23.  *See* MO. ANN. STAT. § 571.101 (2010) (requiring applicants to be 23 years old).   Of course, nose-counting among the States cannot by itself insulate a statute from constitutional challenge; no fewer than 46 states had criminal abortion laws at the time of *Roe v. Wade*, 410 U.S. 113

---

[7] *See* ALASKA STAT. §18.65.705 (2010); ARIZ. REV. STAT. ANN. § 13-3112 (2010); ARK. CODE ANN. § 5-73-309(3) (2010); COLO. REV. STAT. ANN. § 18-12-203(1) (2010); CONN. GEN. STAT. ANN. § 29-28 (2010); FLA. STAT. ANN. § 790.06(2) (2010); GA. CODE ANN. § 16-11-129(b) (2010); HAW. REV. STAT. ANN. §134-2(d) (2010); IDAHO CODE ANN. §18-3302(1) (2010); IOWA CODE ANN. § 724.8 (effective Jan. 1, 2011); KAN. STAT. ANN. § 75-7c04 (2010); KY. REV. STAT. ANN. § 237.110(4) (2010); LA. REV. STAT. ANN. § 1379.3 (2010); MASS. GEN. LAWS ANN. ch. 140 § 131 (2010); MICH. COMP. LAWS ANN. § 28.425b(7) (2010); MINN. STAT. ANN. § 624.714 (2010); MISS. CODE ANN. § 45-9-101(2) (2010); NEB. REV. STAT. ANN. § 69-2433(1) (2010); NEV. REV. STAT. ANN. § 202.3657 (2010); N.J. STAT. ANN. § 2C:58-4 (2010); N.M. STAT. ANN. § 29-19-4 (2010); N.Y. PENAL LAW § 400.00 (2010); N.C. GEN. STAT. ANN. § 14-415.12(a) (2010); OHIO REV. CODE ANN. § 2923.125(D) (2010); OKLA. STAT. ANN. tit. 21 § 1290.9 (2010); OR. REV. STAT. ANN. § 166.291 (2010); PA. CONS. STAT. ANN. § 6109 (2010); R.I. GEN. LAWS § 11-47-11 (2010); S.C. CODE ANN. § 23-31-215 (2010); TENN. CODE ANN. § 39-17-1351 (2010); TEX. GOV'T CODE § 411.172 (2010); UTAH CODE ANN. § 53-5-704 (2010); VA. CODE ANN. §  18.2-308(D) (2010); WASH. REV. CODE ANN. § 9.41.070 (2010); W. VA. CODE ANN. § 61-7-4 (2010); WYO. STAT. ANN. § 61-7-4 (2010).

(1973).  But substantive rights under the Fourteenth Amendment must be "implicit in the concept of ordered liberty" and "deeply rooted in this Nation's history and tradition," *see McDonald v. City of Chicago*, 130 S.Ct. 3020, 3037 (2010), and it is hard to establish that the right of 20-year-olds to carry concealed handguns satisfies these criteria when the vast majority of States withhold that right, and have withheld it for quite some time.  Indeed, it is not entirely clear whether the right to carry a concealed weapon is even included in the meaning of the right "to keep *and bear*" arms described in the Second Amendment.  *See, e.g.*, *Robertson v. Baldwin*, 165 U.S. 275, 281–82 (1897) ("[T]he right of the people to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons."); *U.S. v. Emerson*, 270 F.3d 203, 261 n.62 (5th Cir. 2001).[8]  Whether or not this dictum in *Robertson* is

---

[8] After *Emerson* and *Heller*, at least a dozen courts have questioned whether conceal carry regulations implicate the Second Amendment.  *See Dorr v. Weber*, 741 F. Supp. 2d 993, 1005 (N.D. Iowa 2010) ("Accordingly, a right to carry a concealed weapon under the Second Amendment has not been recognized to date."); *Gonzalez v. Village of West Milwaukee*, 2010 WL 1904977, *4 (E.D. Wis. May 11, 2010) ("The Supreme Court has never held that the Second Amendment protects the carrying of guns outside the home."); *Teng v. Town of Kensington*, 2010 WL 596526, *5 (D.N.H. Feb. 17, 2010) ("Given that *Heller* refers to outright 'prohibitions on carrying concealed weapons' as 'presumptively lawful,' far lesser restrictions of the sort imposed here … clearly do not violate the Second Amendment") (internal citation omitted); 4) *United States v. Hall*, 2008 WL 3097558, *1 (S.D.W.Va. Aug. 4, 2008) ("The court concludes that the prohibition, as in West Virginia, on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment."); 5) *Williams v. State*, 417 Md. 479, 496 (Md. 2011) ("If the Supreme Court, in this dicta, meant its holding to extend beyond home possession, it will need to say so more plainly."); 6) *Maryland State Police v. McLean*, 14 A.3d 658, 668 (Md. App. 2011) (denying applicant's conceal carry renewal and noting under *Heller* that "[c]ertain governmental regulations on the possession of firearms are permissible."); 7) *In re Factor*, 2010 WL 1753307, *3 (N.J. Super. App. Div. April 21, 2010) ("the United States Supreme Court has not held or even implied that the Second Amendment prohibits laws that restrict carrying of concealed weapons."); *People v. Dawson*, 934 N.E.2d 598, 607 (Ill. App. 1 Dist. 2010) ("*Heller* and *McDonald* do not define the fundamental right to bear arms to include activity barred by the AUUW statute," which restricted public possession of firearms); *State v. Knight*, 218 P.3d 1177, 1190 (Kan. App.

correct in suggesting that governments may categorically prohibit concealed weapons without violating the Second Amendment, the fact that the Supreme Court suggested it is enough to demonstrate that the substantive right asserted by the Plaintiffs—the right of 18-20 year olds to carry concealed handguns—cannot qualify as one that is "deeply rooted in this Nation's history and tradition."

Finally, the Plaintiffs cannot satisfy the "deeply rooted in this Nation's history and tradition" test by boosting the level of generality of the right that they seek to vindicate.  The Supreme Court requires a "careful description" of a proposed liberty interest when deciding whether to recognize a new substantive right under the Fourteenth Amendment.  *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  Vague abstractions, such as "the right to be let alone," *see Bowers v. Hardwick*, 478 U.S. 186, 199 (1986) (Blackmun, J., dissenting), or "the freedom not to conform," see *Michael H. v. Gerald D.*, 491 U.S. 110, 141 (1989) (Brennan, J., dissenting), won't suffice.  The liberty interest that the Plaintiffs assert is not some amorphous right of self-defense, but the specific prerogative of 18, 19, and 20 year olds to carry concealed handguns.  Although *McDonald* recognizes that the deeply-rooted-in-tradition test precludes States from completely banning handgun

---

2009) ("This clearly shows that the *Heller* Court considered concealed firearms prohibitions to be presumptively constitutional under the Second Amendment."); *People v. Dykes*, 46 Cal.4th 731, 778 (Cal. 2009) (statute prohibiting possession of a loaded and concealed firearm without a permit did not violate the Second Amendment because *Heller* recognized a right to possess arms in the home); *People v. Perkins*, 62 A.D.3d 1160, 1161 (N.Y. App. Div. 2009) ( "New York's licensing requirement remains an acceptable means of regulating the possession of firearms" that did not contravene *Heller*); *People v. Yarbrough*, 169 Cal.App.4th 303, 314 (Cal. App. 1st Dist. 2008) (upholding state statute prohibiting carrying a concealed weapon because the statute did not "prohibit conduct protected by the Second Amendment as defined in *Heller*").

possession for adults, it never even considers whether the right of teenagers to carry concealed revolvers was so obvious at the time of the Fourteenth Amendment that it needed no express recognition.

   **D.   THE RIGHT TO KEEP AND BEAR ARMS SHOULD NOT BE SUBJECTED TO SO-CALLED "INTERMEDIATE SCRUTINY"; RATHER, THIS CASE SHOULD BE RESOLVED SOLELY ON THE STATES' RESERVED PREROGATIVE TO ESTABLISH AGES OF MAJORITY FOR HANDGUN POSSESSION.**

   Finally, we think it appropriate to comment on the standards of review that other courts have employed in cases involving constitutional challenges to gun regulation.   Neither *Heller* nor *McDonald* resolves this question; although *Heller* explicitly rejects the "rational basis" test it did not decide whether to apply strict scrutiny or intermediate scrutiny. *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008).   But almost every post-*Heller* decision to consider this issue has applied some form of intermediate scrutiny in cases presenting constitutional challenges to gun laws.   *See, e.g., Heller v. District of Columbia* ("*Heller II*"), 698 F. Supp. 2d 179, 187-88 (D.D.C. 2010) (surveying the landscape of post-*Heller* decisions and joining "the majority of courts" in holding that "intermediate scrutiny is the most appropriate standard");[9] *but see United States v. Engstrum*, 609 F. Supp. 2d 1227,

---

[9] Every federal circuit court to consider the appropriate standard of review after *Heller* has applied some form of intermediate scrutiny.   *See Nordyke v. King*, --- F.3d ---, 2011 WL 1632063, *6 (9th Cir. May 2, 2011); *United States v. Masciandaro*, --- F.3d ---, 2011 WL 1053618, at *11 (4th Cir. 2011); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 805 (2010); *United States v. Chester*, 628 F.3d 673, 682–83 (4th Cir. 2010); *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 95-98 (3d Cir. 2010); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010); *United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (en banc)).   In addition, without articulating a standard of review, the Eleventh Circuit has dismissed a number of post-*Heller* Second Amendment claims on the grounds they challenge "a

23

1231 (D. Utah 2009) (applying strict scrutiny and upholding a statute prohibiting possession of firearms by those with domestic violence convictions).  And the Fifth Circuit's precedents, although not resolving the standard-of-review issue, have rejected strict scrutiny as the proper standard to apply.  *See United States v. Darrington*, 351 F.3d 632, 635 (5th Cir. 2003).

The widely held notion that firearms regulations should trigger mere "intermediate scrutiny," while laws affecting free speech, racial discrimination, voting, and court-created "substantive due process" rights receive strict scrutiny, is not defensible and should be emphatically rejected by this Court.  Federal courts have no authority to create favored and disfavored classes of constitutional rights, and now that *McDonald* has recognized the individual right to keep and bear arms as a "fundamental" constitutional right, it must be enforced with the same rigor that courts apply to the other fundamental rights established in the Constitution.  A

---

presumptively lawful longstanding prohibition." *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010); *United States v. White*, 593 F.3d 1199, 1205-06 (11th Cir. 2010).

Federal district courts that have applied intermediate scrutiny include: *GeorgiaCarry.Org, Inc. v. Georgia*, __ F. Supp. 2d __, 2011 WL 240108, at *10 (M.D.Ga. Jan. 24, 2011); (dismissing challenge to law prohibiting carrying of firearms in a place of worship); *Peterson v. LaCabe*, 2011 WL 843909, at *5 (D. Colo. March 8, 2011) (dismissing on cross-motions for summary judgment a challenge to state law requiring conceal carry applicants to be state residents); *Peruta v. County of San Diego*, __ F. Supp. 2d __, 2010 WL 5137137, at *8 (S.D. Cal. Dec. 10, 2010) (dismissing on cross-motions for summary judgment challenge to conceal carry restriction requiring demonstration of "good cause"); *United States v. Bledsoe*, 2008 WL 3538717, *4 (W.D. Tex. Aug. 8, 2008) (applying intermediate scrutiny to the age distinction in federal firearm regulations).

Even if this Court were to apply intermediate scrutiny, the age requirement in the CHL Statute is substantially related to the important government interest identified in the statute's legislative history—preventing handgun violence and crime.  *See Peterson*, 2011 WL 843909, at *8 (conceal carry regulations furthered state's substantial interest in public safety); *Peruta*, 2010 WL 5137137, at *8 (same).

decision that applies a transparently less-demanding "intermediate scrutiny" to Second Amendment claims reflects a judiciary that prioritizes some constitutional rights over others without any textual warrant to do so.  It is no secret that the right to keep and bear arms is viewed far less favorably by legal elites than the constitutional rights secured by other provisions of the Constitution, *see* Sanford Levinson, *The Embarrassing Second Amendment*, 99 YALE L.J. 637 (1989), and courts cannot afford to perpetuate the growing perception among the public that constitutional adjudication depends primarily on the ideological preferences of judges rather than on the objective meaning of an enacted text.

The most straightforward way to resolve this case, without relegating Second Amendment rights to second-class citizenship, is to recognize that the Fourteenth Amendment permits States to set reasonable, non-pretextual ages of majority for the exercise of constitutional rights, and that the 21-year-old minimum-age requirement for a concealed handgun license satisfies this test.

### E.   PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall deny to any person within its jurisdiction the equal protection of the laws."  **CITE**.  This does not, however, require a State to treat all of its residents equally; if it did, almost every State law would be unconstitutional.  Nor does it license federal judges (or litigants) to develop abstract theories of equality to impose on state legislatures.  The text guarantees only "the equal protection of the laws," *not* "the protection of equal laws."  *See, e.g.,* John Harrison, *Reconstructing the*

*Privileges and Immunities Clause*, 101 YALE L.J. 1385, 1390 (1992).  Outside the context of race or sex discrimination, or other cases involving "suspect classes," the Equal Protection clause merely precludes States from engaging in irrational discrimination, and "[t]he burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification."  *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001).  The Texas concealed-handgun law discriminates only on the basis of age and military service; neither creates a "suspect" classification.  *See Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991); *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 620 (1985).

The CHL statute easily survives rational-basis review.  A legislature could rationally conclude that individuals under the age of 21 are less suited to carry concealed handguns than persons over the age of 21, and that withholding licenses from underage residents will promote public safety and crime prevention.  There is ample empirical evidence to support this belief, *see supra* at 16-17, although empirical data is not necessary for a statute to survive rational-basis review.  *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993) (holding that under rational-basis review, a legislative decision "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.").  Texas law makes a similar age-based distinction with alcohol consumption, *see* TEX. ALCO. BEV. CODE § 106.06, and the rationale behind the age requirement

for purchasing alcohol—the relative immaturity and poor judgment of young people—similarly supports the minimum-age requirement for CHL applicants.

A rational legislature could also imagine that military personnel or veterans are more equipped to handle concealed handguns at ages 18, 19, and 20. This distinction in the statute rests on the fact that "military personnel currently receive[] extensive training in handling weapons." Senate Comm. on Veterans Affairs and Military Installations, Bill Analysis, Tex. S.B. 322, 79th Leg., C.S (2005). Appendix p. 22.

## IV.
## CONCLUSION

For the foregoing reasons, Defendant Steven McCraw respectfully requests that the Court grant summary judgment and dismiss all of Plaintiffs' claims with prejudice.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for
Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General
State Bar No. 24075463

DREW L. HARRIS
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-1695
Fax: (512) 474-2697

COUNSEL FOR DEFENDANT

CERTIFICATE OF SERVICE

I certify that on May 16, 2011, the above and foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Charles J. Cooper
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
ccooper@cooperkirk.com

Fernando M. Bustos
Law Offices of Fernando M. Bustos, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
fbustos@bustoslawfirm.com

COUNSEL FOR PLANTIFFS

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General