UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JAMES D'CRUZ; NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., *Plaintiffs*, | § | |
| v. | § | CIVIL ACTION NO. 5:10-CV-141-C |
| STEVEN McCRAW, in his official Capacity as Director of the Texas Department of Public Safety, *Defendant*. | § | |

**RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

JONATHAN F. MITCHELL
Solicitor General

DREW L. HARRIS
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1695
Fax: (512) 474-2697
jonathan.mitchell@oag.state.tx.us

COUNSEL FOR DEFENDANT

# TABLE OF CONTENTS

Table of Authorities ........ ii

A. It Is the Fourteenth Amendment, Not the Second Amendment, That Limits the States' Authority to Regulate Firearms, And It Allows States To Establish An Age of Majority for Handgun Carriage Even If the Federal Government Lacks This Power ........ 3

B. The Militia Act of 1792 Does Not Support a Constitutional Right of 18-Year-Olds to Carry Handguns ........ 5

C. Plaintiffs Cannot Establish a Federal Constitutional Right of 18-Year-Olds to Carry Concealed Weapons By Relying on State Law or Developments That Post-Date the Fourteenth Amendment ........ 8

Conclusion ........ 11

Certificate of Service ........ 13

# TABLE OF AUTHORITIES

## CASES

*Barron v. Baltimore*,
32 U.S. 243 (1833) .......... 3

*District of Columbia v. Heller,*
554 U.S. 570 (2008) .......... 2

*McDonald v. City of Chicago*,
130 S. Ct. 3020 (2010) .......... 2, 4

*Michael H.v. Gerald D.*,
491 U.S. 110 (1989) .......... 7

*United States v. Lopez*,
514 U.S. 549 (1995) .......... 4

*United States v. Morrison*,
529 U.S. 598 (2000) .......... 4

*Washington v. Glucksberg*,
521 U.S. 702 (1997) .......... 7

## STATUTES

Americans with Disabilities Act of 1990 (ADA),
42 U.S.C. § 12101, *et seq.* .......... 6

Religious Freedom Restoration Act of 1993 (RFRA),
107 Stat. 1488, 42 U.S.C. § 2000bb, *et seq.* .......... 6

Voting Rights Act of 1965 (VRA), 42 U.S.C. § 173, *et seq.* .......... 6

## OTHER AUTHORITIES

Akhil Reed Amar,
*The Bill of Rights and the Fourteenth Amendment*,
101 YALE L.J. 1193 (1992) .......... 4

Randy E. Barnett, *The Original Meaning of the Commerce Clause*, 68 U. CHI. L. REV. 101 (2001) .......... 4

Larry D. Barnett, *The Roots of Law*, 15 AM. U. J. GENDER SOC. POL'Y & L. 613 (2007) .......... 8

Militia Act of 1792, 1 Stat. 271 (1792) .......... 2, 5–8

## INTRODUCTION

The Plaintiffs acknowledge, as they must, that the Constitution permits States to prohibit minors from carrying handguns in public. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 2. The disagreement in this case turns on whether the Constitution adopts a universal definition of "minor" that States must follow for purposes of the right to carry a handgun. The Plaintiffs' burden is to show that the State of Texas relinquished its prerogative to establish the age of 21 as the age of majority when it ratified the Fourteenth Amendment, and their brief comes nowhere close to making such a showing.

## I.

The Plaintiffs' brief starts off on the wrong foot by couching the legal questions for this Court in terms of the Second Amendment. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 2. The relevant constitutional restrictions in this case come from the *Fourteenth Amendment*, which binds the states, not the Second Amendment, which binds the federal government. The Plaintiffs also beg the question by describing Plaintiffs-in-waiting Rebekah Jennings, Brennan Harmon, and Andrew Payne as "adults,"[1] and asking this Court to resolve whether "the Second Amendment appl[ies] to all law-abiding adults." *Id.* The very issue in this case is whether the federal Constitution compels Texas to treat 18-year-olds as "adults." The Plaintiffs' statement of the issues assumes the answer to this question, and then misleads this Court by acting as though it need

1. Plaintiff James D'Cruz is not described as an "adult" and is unmentioned in the Plaintiffs' brief, even though he remains the only named individual plaintiff in this case pending this Court's resolution of the motion to join filed by Jennings, Harmon, and Payne.

only resolve the more facile question whether "the Second Amendment" extends to "all law-abiding adults."

Defendant McGraw's case rests on a simple yet elegant syllogism: The Constitution permits the States to prohibit minors from carrying handguns in public. At the time of the Fourteenth Amendment's ratification, the age of 21 was recognized as the dividing line between adulthood and minority. Therefore, the Constitution allows Texas to adhere to 21 years as the age of majority for handgun carriage and limit the rights of 18-year-olds to carry concealed handguns.

The Plaintiffs do not deny either the major premise or minor premise of this syllogism. Yet they think that they can escape its conclusion by invoking the Militia Act of 1792, as well as post-ratification developments that have extended many (though not all) privileges of adulthood to 18-year-olds.[2] Neither of these shows that the right of 18-year-olds to be treated as legal adults for all purposes has ever received the formal supermajoritarian imprimatur required by Article V of the Constitution, leaving this Court without any authority to impose the Plaintiffs' policy preferences on the people of Texas.

[2] The Plaintiffs also try to escape the conclusion of this syllogism by issuing repeated ad hominem attacks on the State of Texas, implying that its position in this litigation contradicts the *amicus curiae* briefs that it submitted in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 1–2, 11, 21. We will not waste the Court's time by demonstrating how the statements that the Plaintiffs quote from our *Heller* and *McDonald* amicus briefs in no way disparage a State's prerogative to establish an age of majority for the various rights of gun ownership, because the constitutionality of a State's laws is not affected by the briefs that a State files in previously litigated cases.

### A. IT IS THE FOURTEENTH AMENDMENT, NOT THE SECOND AMENDMENT, THAT LIMITS THE STATES' AUTHORITY TO REGULATE FIREARMS, AND IT ALLOWS STATES TO ESTABLISH AN AGE OF MAJORITY FOR HANDGUN CARRIAGE EVEN IF THE FEDERAL GOVERNMENT LACKS THIS POWER.

The Plaintiffs' brief spends a great deal of time discussing the understandings of the right to keep and bear arms at the time of the Second Amendment's ratification, as well as the restrictions it imposes on the federal government's authority to regulate firearms. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 9–32. But the Plaintiffs' analysis commits a fundamental error by proceeding from the premise that the Constitution imposes identical constraints on the federal and state governments' prerogative to regulate firearms.

The Second Amendment provides that "the right of the people to keep and bear arms shall not be infringed." Its language contains no exceptions for minors or infants. Nor does it anticipate or accommodate any of the "historically understood" limitations on the use of firearms that the Plaintiffs describe in their brief, such as the prohibitions on "going armed to terrify the populace," or restricting the possession of firearms in schools. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 27–28. The Second Amendment is phrased in seemingly absolute terms not because the First Congress overlooked these scenarios but because the amendment was written to constrain only the federal government, not the States. *See Barron v. Baltimore*, 32 U.S. 243 (1833). The federal government holds only enumerated powers and lacks a general police power to ban gun

possession in schools or regulate violent, non-economic criminal conduct, so there was no need to specify exceptions in the Second Amendment for matters that the state governments would handle. *See generally United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000). And most assuredly, at the time of the Second Amendment's ratification, the federal government had no Article I powers to establish a nationwide minimum age for carrying concealed handguns. *See, e.g.*, Randy E. Barnett, *The Original Meaning of the Commerce Clause*, 68 U. CHI. L. REV. 101 (2001).

Plaintiffs seem to think that *McDonald* overruled *Barron* sub silentio and retroactively transformed the Second Amendment into a provision that bound state governments from the get-go. *McDonald* did no such thing; its holding rested *entirely* on the meaning of the Fourteenth Amendment and on the understandings of fundamental rights that prevailed at the time of its enactment. *See McDonald v. Chicago*, 130 S. Ct. 3020 (2010). *Barron*'s holding was unassailable at the time it was decided, and it remains good law today. *See* Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 Yale L.J. 1193, 1198–1217 (1992). The States were *never* bound by *any* provision in the Bill of Rights prior to the Fourteenth Amendment. It is only by determining the meaning of the Fourteenth Amendment and considering the context in which it was enacted that one can resolve the Plaintiffs' constitutional claims in this case.

### B. THE MILITIA ACT OF 1792 DOES NOT SUPPORT A CONSTITUTIONAL RIGHT OF 18-YEAR-OLDS TO CARRY HANDGUNS.

Plaintiffs recognize that "the common-law age of majority of 21 prevailed in the states when the Second Amendment was ratified." *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 14. This common-law rule continued through the ratification of the Fourteenth Amendment, and on top of that section 2 of the Fourteenth Amendment explicitly recognizes the age of 21 as the age of majority for voting. But the Plaintiffs try to overcome this evidence by trotting out the Militia Act of 1792, an Act of Congress that required every able-bodied white male aged 18 through 45 to enroll in the militia and "provide himself with a good musket or flintlock." 1 Stat. 271. The statute provides, in relevant part:

> That each and every free *able-bodied white male* citizen of the respective States, resident therein, who is or shall be of age of eighteen years, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia, by the Captain or Commanding Officer of the company, within whose bounds such citizen shall reside, and that within twelve months after the passing of this Act.

1 Stat. 271 (Emphasis added). As the Plaintiffs see matters, the Militia Act proves that the States have forever surrendered their prerogative to establish a 21-year-old age of majority for handgun carriage.

The Plaintiffs' first mistake is in assuming that a federal *statutory* right to gun ownership must automatically reflect a federal constitutional entitlement. Everyone knows that Congress is permitted to confer federal statutory rights on individuals that extend beyond the minimum floor required by the Constitution. One need only think of the Religious Freedom Restoration Act, or the numerous

civil-rights laws that Congress enacts under section 5 of the Fourteenth Amendment. *See* Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. § 2000bb, *et seq*.; Voting Rights Act of 1965 (VRA), 42 U.S.C. § 173, *et seq*.; Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, *et seq*. Consider also that the First Congress enacted legislation providing a right court-appointed defense counsel in capital cases (but not in non-capital cases). Federal Crimes Act of 1790, ch. 9, 1 Stat 112, 118. This statute does not "prove" that the Sixth Amendment was understood in 1791 to guarantee a right to appointed counsel in capital cases. It reflects only that the First Congress chose, as a matter of legislative discretion, to supply court-appointed defense attorneys in capital cases, even though the Sixth Amendment (at the time) did not compel them to do this.

The Plaintiffs' second error is in asserting that a right to carry handguns in public follows from a statutory duty of militia service. All that the Militia Act required was that the able-bodied white male enrollee "provide himself with a good musket or flintlock." 1 Stat. 271. It did not require or even authorize the 18-year-old enrollee to carry this musket or flintlock in public apart from his military service. Plaintiffs' acknowledge as much when they assert only that "militia membership presupposed firearm possession." *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 12. Yet the State of Texas already allows 18-year-olds to possess firearms and, unlike the Militia Act, it extends this right to men and women of all races. More than that, Texas allows 18-year-olds to carry long guns in public for any purpose, and own handguns so long as they keep them at

home or carry them in their automobiles. And if that were not enough, Texas allows 18-year-old military personnel or veterans—the closest analogue to the 18-year-old militia enrollees described in the 1792 Militia Act—to acquire concealed-handgun licenses and carry their handguns in public places.

What the Plaintiffs have done is to take a narrow and specific statutory right—the right of men aged 18 and older to own firearms for service in the militia—and use it as evidence to support a general and abstract constitutional right, one that encompasses the right of *all* 18-year-olds, both men and women, not only to own firearms but to carry handguns in public, without regard to membership or service in the military or militia. Their argument is reminiscent of Justice Brennan's dissent in *Michael H. v. Gerald D.*, 491 U.S. 110, 141 (1989), where he tried to establish constitutional protections for the behavior of an adulterous natural father by boosting the level of generality and recharacterizing the litigant's conduct as the "freedom not to conform." The Court rejected this maneuver in *Michael H.*, and buried it once and for all in *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997), which insisted that litigants provide a "careful description" of the liberty interests that they assert under the Fourteenth Amendment's Due Process clause. The laws of Texas are consistent with any "careful description" of the statutory right secured in the 1792 Militia Act.

Finally, there is some tension, to put it mildly, between the Plaintiffs' eagerness to rely on the Militia Act's *inclusion* of 18-year-olds, and their understandable refusal to draw any constitutional conclusions from the Militia Act's

*exclusion* of non-whites, women, and the disabled. Yet it is far from clear that this Court can invoke the Militia Act in such an opportunistic manner. Anyone who tries to fob off the Militia Act's treatment of non-whites, women, and disabled Americans as the relic of a bygone era must equally recognize that the era of compulsory militia service for 18-year-olds has come and gone. It appears that the only options are to adjust one's interpretation of the Second and Fourteenth Amendments to accommodate *all* of these new social realities, or else follow the Plaintiffs' advice and stick to the "constitutional right as originally understood" in 1791. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 4. If the latter course of action offers any promise of preserving the constitutional rights of gun ownership for non-whites, women, and the disabled, then the Plaintiffs need to explain how this can be done, and their brief makes no effort to do so.

### C. PLAINTIFFS CANNOT ESTABLISH A FEDERAL CONSTITUTIONAL RIGHT OF 18-YEAR-OLDS TO CARRY CONCEALED WEAPONS BY RELYING ON STATE LAW OR DEVELOPMENTS THAT POST-DATE THE FOURTEENTH AMENDMENT.

Both the Second and Fourteenth Amendments were enacted at a time when 18-to-20-year-olds were considered minors, and this remained the case in almost every State until the 1970s. *See* Larry D. Barnett, *The Roots of Law*, 15 AM. U. J. GENDER SOC. POL'Y & L. 613, 681–86 (2007). The Plaintiffs do not deny this fact, but they apparently believe that post-ratification developments, and the decisions of Texas to expand the rights of 18-year-olds as a matter of legislative grace, can retroactively change the meaning of the Fourteenth Amendment and impose a constitutional obligation on every State to treat 18-year-olds as legal adults for all

purposes. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 15 ("Today's 18-to-20-year-olds *are no longer considered minors* by the State of Texas or, indeed, by the vast majority of States in the Union.") (emphasis in original). We have already criticized the Plaintiffs' argument on this score, *see* Brief in Support of Defendant's Motion for Summary Judgment at 14–15, so we incorporate those comments by reference and add the following observations.

First, the Plaintiffs' argument suggests that the Texas concealed-handgun statute would be constitutional (or more likely to be upheld as constitutional) prior to 1970, as well as at the time of the Fourteenth Amendment's ratification. Plaintiffs do not endeavor to explain how their reliance on post-ratification events can be reconciled with their insistence that this Court "employ a textual and historical analysis to determine whether the particular firearm restriction in question contravenes the constitutional right *as originally understood*." *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 3–4. Indeed, it is apparent that the Plaintiffs, while dressing up their brief as an originalist analysis of the Constitution, are in fact advancing the most pernicious variant of living constitutionalism, an approach that *pretends* to be implementing the decisions of past Article V supermajorities but in reality imposes nothing more than the policy preferences of a defeated political constituency.

Second, Plaintiffs seem unaware of the double-edged nature of their argument. If post-ratification developments can lock the State of Texas into an 18-year-old age of majority, as the Plaintiffs believe, they can also *liberate* Texas (and

other States) to enact gun-control regulations that came into fashion after the Fourteenth Amendment's ratification, such as the blanket prohibitions on carrying concealed firearms that many States adopted in the late nineteenth century, or the more onerous restrictions on gun ownership that exist in other jurisdictions throughout the United States. Plaintiffs cannot have it both ways by insisting that this Court follow modern developments on the age-of-majority issue, but then ignoring modern developments whenever they point to an outcome detrimental to gun rights.

Finally, the line between adulthood and minority remains a social construction even after the reforms of the 1970s, and the Constitution permits States to establish different ages of majority for different activities without running a risk that their decisions will become entrenched by federal courts purporting to interpret the Constitution. There is nothing special, let alone constitutionally mandated, about an 18-year age of majority for any purpose except voting—and it took a constitutional amendment to establish that status even after the right to vote was recognized as a "fundamental" right. States retain the prerogative to establish different definitions of adulthood for different purposes, and the Plaintiffs offer *zero* evidence that Texas signed away this power by ratifying the Fourteenth Amendment.

**II.**

None of this leaves the Plaintiffs without a remedy for their grievances. They can try persuade the elected officials of Texas to amend their concealed-handgun

law, or petition Congress to present a constitutional amendment to the States for ratification (as the proponents of the 18-year-old voting age did). But their efforts to enlist the federal courts in their attempt to obtain a concealed-handgun license reflect nothing more than a rear-guard action by those whose policy preferences have been rejected by the elected representatives of this State. Plaintiffs must first obtain the Article V victory that our Constitution requires before asking this Court to nullify or modify democratically enacted legislation. They did not obtain any such victory in either 1791 or 1868, and this Court must therefore deny Plaintiffs' Motion for Summary Judgment.

**CONCLUSION**

The Plaintiffs' Motion for Summary Judgment should be denied.

Respectfully submitted.

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for
Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General

DREW L. HARRIS
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1695
Fax: (512) 474-2697

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that on June 6, 2011, the above and foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Charles J. Cooper
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
ccooper@cooperkirk.com

Fernando M. Bustos
Law Offices of Fernando M. Bustos, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
fbustos@bustoslawfirm.com

COUNSEL FOR PLAINTIFFS

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Solicitor General